## EMORY WILSON v. SCHOOL DISTRICT No. 2.

1. MECHANICS LIENS—*Public School Houses.* The provisions of the lien law of 1872 (Laws of 1872, ch. 141,) are applicable in case of the erection by a school district of a public school-house, and determine the respective rights and liabilities of sub-contractor, contractor, and district.

2. EXECUTIONS, *Against School Districts; Act Construed.* Section 85, page 932, General Statutes, which prohibits the issue of executions upon judgment against school districts, must not be carried beyond the manifest import of its terms, and does not directly or by implication repeal or limit acts granting rights and fixing liabilities before judgment.

*Error from Anderson District Court.*

EMORY WILSON, on the 3d of January 1873, filed in the proper office his statement for a mechanic's lien, claiming a

lien on a certain school-house, and the lots upon which it was situated — property of *School District No. 2,* Anderson county. Shortly afterward *Wilson* filed his petition in the district court, claiming a money-judgment against Isaac Usher, who had contracted with said school district to build said school-house, and the foreclosure of a mechanic's lien against said school district, *Wilson* claiming to be a sub-contractor under said Usher. Usher and the *School District* filed their separate answers to said petition, upon which pleadings, and the evidence presented, the case was tried in March 1873. *Wilson* recovered a money-judgment against Usher for $520.62, and $95.95 as costs of suit. A further order or decree therein was made as follows:

"It is also found and adjudged by the court, that the materials set out in the petition of the plaintiff (said Emory Wilson) were furnished under a contract, and were used in the construction of said building; and it is further ordered and adjudged that said defendant School District No. 2, Anderson county, pay the said plaintiff any sum that may be due to the said Isaac Usher on the contract to build said school-house described in the plaintiff's petition, not to exceed the amount of the judgment so as aforesaid rendered, and costs of this action. And if a sufficient amount should not be due nor become due to said Usher from said School District to pay said judgment of the plaintiff, and all other liens which may hereafter be established, the said sum to be distributed *pro rata* upon this and such other liens."

Subsequently to said proceedings, and in May 1874, an amicable action was commenced in the district court, wherein *Wilson* was plaintiff, and said *School District* was defendant, to determine the "rights of the parties thereto" respecting the above-mentioned claim and judgment in favor of *Wilson* for $520.62, and costs, and interest thereon. In this amicable action the parties signed and filed an agreed statement of facts. This statement sets forth the pleadings and judgment in the above-mentioned action of "Wilson v. Usher and School District No. 2;" the statement made and filed by *Wilson* for his said mechanic's lien; and the contract between Usher and the *School District.* From these papers, and the

8—17 KAS.

other of the agreed facts, it appears that by the contract be-
tween Usher and the *School District*, Usher was to furnish
all materials and labor and build and finish for the district
a school-house at an agreed price or cost of $17,200; that
such building was commenced in 1872, and was to be com-
pleted by the 15th of May 1873.; that the aggregate of pay-
ments made to Usher under his contract was $14,059.80;
that in March 1873, Usher abandoned his contract, removed
from Kansas, leaving said school building unfinished, and
has never returned to the state; that after Usher's abandon-
ment of his contract, the officers of the *School District* took
possession of the building, and caused it to be finished in ac-
cordance with the plans and specifications in Usher's contract
—to accomplish which they were obliged to pay $3,000, thus
making their. payments on account of said school building,
$17,059.80 — or $140.20 less than the amount fixed in
Usher's contract; that *Wilson's* judgment for $520.60 for
materials furnished to Usher, and for $95.95 for costs of suit,
recovered in January before Usher left the state, was unpaid;
that two other liens on said building had been in like man-
ner since established in favor of other parties, one for
$220.17, and one for $106.39, and that there was another
claim of like nature, not yet in judgment, amounting to
$657.40. To pay off *Wilson's* claim, and the other claims,
would require $1,600.51 — thus making the school building
cost a sum largely in excess of the contract-price. Upon the
facts so agreed to, the action was submitted to the district
court at the September Term 1874. The court found "in
favor of the defendant," and gave judgment against the plain-
tiff for costs. From this judgment plaintiff appeals, and
brings the case here on error.

*W. A. Johnson*, for plaintiff:

It is shown by the agreed facts, that on the 31st of De-
cember 1872, the architect agreed upon made his estimate
of work then done on said school-house by Usher, which
amounted to the sum of $15,622, of which only $14,059.80

was paid, and that ten per cent. of said estimate was reserved from the payment to Usher, as provided in the contract, and that the same had not been paid to him at the rendition of said judgment. The amount so reserved is $1,562.20. It is provided by our lien laws, that any person who shall furnish any material or perform any labor under a contractor, etc., shall have a lien for the amount due for such labor or material on such lot or lots, from the same time, and to the same extent, and in the same manner, as such original contractor; that the owner shall not be liable to the sub-contractor for any greater amount than he contracted to pay the original contractor; (Laws 1872, p. 295, § 2;) and all payments made to the original contractor shall be at the risk of the owner for sixty days after the completion of the building. The ten per cent. so reserved was not to be withheld as security for the performance of the contract on the part of Usher, for he had executed his bond with sureties for the faithful compliance with his contract, so that the school district was protected in the contract by the bond of said contractor. Said ten per cent. so reserved was more than sufficient to cover all liens that were established or existed against said building.

The architect found that the work done on the building on the 31st of December 1872, was $15,622. Less than $2,000 of the entire work that was required to complete the building under said contract remained to be done. If the officers of said school district, after the rendition of the judgment for Wilson on said mechanic's lien paid out to said Usher, or to other persons, more money than it would have required to complete Usher's contract, it would not affect the right of plaintiff to have his claim paid; they could not affect his right, or disregard his claim for pay for the materials he had contributed to the construction of said building. They could not excuse the bondsmen of Usher, and deprive the plaintiff of the collection of his claim, under the pretense that it cost them more to complete the building than the original contract with Usher. Wilson was entitled to a judgment on the agreed facts for the sum of $520.62, and the further sum of

$95.95 as costs in the former action, together with interest from 20th March 1873.

*A. Bergen,* and *L. K. Kirk,* for defendant:

The record in the action of Wilson against Usher and the school district, shows that the court below did not find that Wilson was a sub-contractor, but simply that the materials were furnished "under a contract." With whom the contract was made, the record is silent. The court may have found that the materials furnished by plaintiff were furnished after *all* payments had been made to Usher by the school district. The court viewed the proceedings against the school district in the nature of a garnishment, which we submit is the correct view. A mechanic's lien cannot be had or enforced against a public building such as a school-house: Gen. Stat., p. 932, ch. 92, § 85; Philips on Mechanics' Liens, 255, 610; 37 How. Pr. (N. Y.) 520; 39 Ill. 610.

The court adjudged that the school district should pay Wilson the sum *due* Usher under his contract to build the school-house. This on March 20th 1873. To find what *was due* Usher, if anything, from the school district, the plaintiff and defendant presented their agreed statement of facts to the court, upon which statement the court found for the defendant. We submit that the only question properly before this court for determination is, Did the court below err in finding that there was nothing due from the defendant to Isaac Usher, on the case presented? The school district had paid its contractor, Usher, $15,622, less ten per cent. thereof, prior to any notice or claim of lien by plaintiff in error, and prior to the judgment rendered against the school district to pay what was due Usher to Wilson. They paid him nothing thereafter. On the contrary, Usher removed from the state, abandoned his contract to build the school-house, and left the building unfinished. When the building was to have been completed, it was not done. The school district took possession of the unfinished building, and finished it in accordance with the contract between Usher and

the district, and expended in so doing all that would have been due to Usher had he completed the building under the contract. It is evident therefore that Usher had no just demand against the district; that nothing was due him.

But beyond this, a sub-contractor has no greater rights against the owner of premises subject to the mechanics' lien law, than the original contractor. The proviso in § 2 of ch. 141, Laws of 1872, p. 295, in regard to payment by the owner, does not limit or set aside this proposition of law. Also see Philips on Mechanics' Liens, 200–203; 1 E. D. Smith (N. Y.) 692; 2 id. 560. A contractor who abandons his contract, leaving the building which he agreed to finish, unfinished, and which building the owner then finishes according to the contract, and expends in so doing more (together with what had been paid in good faith to such contractor before knowledge of any liens or claims by subcontractors) than the original contract-price, has no lien upon such building, nor has his sub-contractor. Philips on Mechanics' Liens, 193, 200, 203; 1 E. D. Smith, 717, 760; 11 Wis. 107.

The opinion of the court was delivered by

BREWER, J.: Are the provisions of the lien law of 1872 applicable in case of the erection by school districts of public school buildings? This is the principal question in this case, and must, we think, be answered in the affirmative. The language of the act is general and contains in itself no express or implied exceptions of school or other public buildings. "Any mechanic or other person who shall under contract with the owner of any tract or piece of land, his agent or trustee, * * * perform labor or furnish material for erecting, altering, or repairing any building, or the appurtenances of any building, or any erection or improvement, * * * shall have a lien * * * for the amount due to him for such labor or material." Laws 1872, p. 294. This language could scarcely be made more comprehensive. *Any* mechanic, the owner of *any* tract, *any* building. Here is no suggestion of any excep-

tion.   If public school buildings are exempted, it must be because of some other statute, or because they are in the very nature of things not subject to such liens.   There is no express exemption by other statute.   That upon which counsel rely is § 85, on p. 932 of the Gen. Stat., which provides in effect that no execution shall issue upon judgments against school districts, but that the district board shall levy a tax to pay such judgment, and in default thereof judgment may be recovered against the delinquent officers.   Hence, as, by this, executions are forbidden, and the power to enforce a lien by levy and sale taken away, it is claimed that the lien itself cannot be created.   This seems to us a *non sequitur*, and that full force is given to this statute if it is carried as far as its language goes and no farther; that is, if it operates to prevent the issue of process upon judgments, leaving all proceedings and rights prior thereto to be regulated and determined by other statutes.   In this way both statutes are made operative.   Contractor and subcontractor may secure liens.   The latter may be protected against the irresponsibility or the rascality of the former, and the rights of all parties adjusted in accordance with the terms of the lien law.   Liens may be foreclosed and placed in judgment, and then like other judgments are met by this statute which provides a tax instead of an execution as a means of enforcement.   But it may be said that there is an incongruity in calling that right a specific lien, which is incapable of direct enforcement; and further, that the necessities of public business require that public buildings shall be held exempt from mechanics' liens, or any risk, incident thereto, of their being lost to the public use.   But many specific liens exist which cannot at all times be directly or otherwise enforced.   A mortgage prior to its maturity, and a decree of foreclosure prior to the time when by its terms process may issue, are examples.   So there are liens whose enforcement is suspended during the existence of the title by which defendants hold their property, as the lien in some states of judgments upon homestead property, a lien suspended or incapable of enforcement until the homestead-

quality is removed. So here, there is nothing to prevent the existence of a lien upon a school building, suspended or incapable of direct enforcement until the public use of the building ceases, or the title passes from the district. Upon the other proposition, we find in *Chicago v. Halsey*, 25 Ill. 595, that a majority of the court held that independent of statute no judgment could be levied upon the public property of a city; and in *Darlington v. The Mayor, &c.*, 31 N. Y. 164, that Ch. J. Denio, giving the opinion of the court, makes this distinction, holding that no property held by a city for public use can be seized on execution, but that any private property belonging to the city and not so held may be thus seized. In *Brinkerhoff v. The Board of Education*, 37 How. Pr. 520, a majority of the common pleas court held that a mechanic's lien could not be had or enforced against a public schoolhouse. See also Philips on Mechanics' Liens, 255, 610, 611; *Wilson v. Comm'rs*, 7 Watts & S. 197; *Williams v. Controller*, 18 Penn. St. 275; *Foster v. Fowler*, 60 Penn. St. 27; *Poillon v. Mayor, &c.*, 47 N. Y. 666; *Shattell v. Woodward*, 17 Ind. 225. That where there is no statutory restriction, process may issue on judgments against municipal or quasi municipal corporations, see city of *Independence v. Trouvalle*, 15 Kas. 70. Whether upon such execution property held for public use can be taken, is a question as yet undecided in this state, and not necessary to be decided now. For in this case, no execution can issue. And the question is, whether taking away the process for enforcing a lien, takes away all rights to create the lien; and for reasons heretofore suggested, we think it does not. If the lien law applies in determining the representative rights and liabilities of owner, contractor, and subcontractor, then a payment to the contractor prior to the expiration of sixty days from the completion of the building does not release the owner from liability to the sub-contractor. Laws 1872, p. 295, § 2; *Shellabarger v. Thayer*, 15 Kas. 619.

The remaining question is, as to the effect of a judgment. The facts were presented in an agreed case under § 525 of the code of civil procedure, Gen. Stat. 733, and without

pleadings. Among the facts, it appears that a judgment was rendered in a suit brought by this plaintiff against the contractor and the school district for the foreclosure of this lien, in which the court finds the amount due from the contractor to plaintiff, and renders a personal judgment therefor; also finds that the materials set out in the petition were furnished by plaintiff under a contract, and were used in the construction of the school building, and then the district is ordered to pay said plaintiff the amount of the judgment out of any moneys due the contractor, provided there is enough left to pay this and all other liens that may be established, if not, then *pro rata*. To this judgment no exception was taken, and no proceeding had to reverse or modify it. Now it is claimed that the effect of this is to discharge any so-called mechanics-lien, and gives to the plaintiff what is equivalent to a judgment against the school district as a garnishee, and that as a matter of fact the district did not and does not owe the contractor anything. There is much in the language of the judgment to sustain this claim of counsel, and it is doubtful whether it should not be held to be well founded. But after considering the pleadings in connection with the judgment, and the facts agreed to in this case, we are constrained to overrule the claim. There is nothing in the pleadings in that case to warrant a mere garnishee proceeding and judgment. It is a suit to foreclose a mechanics-lien, and the issues ran to the fact of the debt and the existence of the lien. The judgment should be based upon the issues, and the forms of expression should be construed in reference thereto. It seems to us therefore, that without doing unreasonable violence to language it may be held that the court intended to and did adjudicate the validity of the lien, and expressed itself in the language used for the sake of avoiding any grant of process to enforce the lien, seemingly forbidden by the section of the statute heretofore referred to. Such a construction places the judgment in harmony with the issues and the pleadings, and the admitted facts in this case.

We think therefore that the plaintiff was entitled to a judgment; and the case will be reversed and remanded, with instructions to render judgment against the defendant and in favor of the plaintiff for the amount of his lien, interest, and costs.

All the Justices concurring.