## W. H. SAPP v. COMM'RS OF BROWN COUNTY.

TAX-SALE CERTIFICATES; *Assignment; Tax Law Construed.* On the 1st day of June 1866, the county treasurer of Brown county issued a tax-sale certificate on a tax sale made of certain land in May 1862, for taxes levied on said land in 1861, and on the same day the county clerk assigned said certificate to W. The tax sale was valid, but the tax-sale certificate, with its assignment, was void, on account of a want of power in said officers to issue said certificate, and to assign the same. The assignee afterward received a tax deed on said certificate, which tax deed was also void. Afterward he conveyed his interest in the land to S., by a quitclaim deed. Said assignee and S. paid in money all the taxes, penalties, interest, and costs due on said land for all the years from 1861 up to 1869, but they were fully cognizant at the time of such payment of all the facts having any connection therewith. *Held,* That S. cannot now recover said money back from said county; and that § 85 of the tax law of 1866, and § 121 of the tax law of 1868, where they mention a tax sale, relate to the original tax sale made by the county treasurer, and not to the subsequent assignment of a tax-sale certificate made by the county clerk.

*Error from Brown District Court.*

THE subjoined opinion contains a full statement of all necessary facts. The district court, at April Term 1875, gave judgment in favor of the *Board of County Commissioners,* defendant, and plaintiff *Sapp* brings the case here for review.

*W. D. Webb,* for plaintiff.

*C. E. Berry,* county attorney, for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Sapp against the board of county commissioners of Brown county, for the recovery of $281.70, alleged to be due on account of certain taxes paid by Sapp and his assignors into the county treasury of said county for the years from 1861 up to 1869. Many of the facts of this case will be found stated in the case of *Sapp v. Morrill,* 8 Kas. 677; for that case and this grew out of the same original transactions. The facts necessary now to be stated are substantially as follows: In 1861 taxes were levied upon two certain pieces of land in Brown county, and in May 1862 these lands were sold at a tax sale for such taxes, Brown county being the purchaser. It is admitted that this tax sale was legal and valid. On the 1st of June 1866, A. Webb & Co., for the purpose of procuring the tax titles then accruing against said lands, paid into the county treasury of Brown county the sum of $73.13—that being the amount of taxes, penalties, interest and costs then due on said lands—and in consideration therefor, received from the county treasurer tax-sale certificates for said lands, which tax-sale certificates were duly assigned to them by the county clerk. It is admitted that these tax-sale certificates, and their assignments, were wholly without authority, and were void. On the 14th of July 1866, tax deeds were issued to A. Webb & Co. on these tax-sale certificates, which tax deeds are also admitted to be unauthorized and void. Afterward, (as the parties in this case admit,) said lands were deeded to Sapp by a quitclaim deed from A. Webb & Co. These deeds were all duly recorded in the office of the register of deeds. Sapp and his assignors, (or rather, grantors,) paid all the taxes levied on said lands up to the year 1869. Afterward, and on 4th June 1870, before any other taxes became due on said lands, Morrill commenced his said action against Sapp, thereby raising the question as to the validity of Sapp's tax title to said lands; and for that reason Sapp has not paid any taxes thereon since. It is admitted, that, for all

the money paid by Sapp and his grantors into the county treasury, neither he nor they have ever received any benefit or consideration; that their tax certificates and tax deeds were and are wholly void, giving to them no title to or interest in said lands. The questions then arise: Must Sapp and his grantors lose this money? and if they are so to lose it, for whose benefit must the loss occur, that of the public, or of the owner of the lands? but if they are not to lose it, then what remedy have they? It is not necessary for us to decide all of these questions now, and in this case. Indeed, it is only necessary for us now to decide whether Sapp has the remedy which he has pursued in this action. It is not necessary to decide whether he or his grantors have any other remedy; and if he and his grantors are to lose all the money which they have paid into the county treasury, it is not necessary for us to decide whether such loss inures to the benefit of the public, or to the benefit of the owner of said lands. But upon this last question see *Haxton v. Harris*, 19 Kas. 511.

The present action is by Sapp to recover said money back from Brown county. Can he maintain such an action? This is the only question in this case. As Sapp and his grantors were fully cognizant of all the facts having any connection with the payment of said money, we suppose it is clear that he cannot recover it back upon any general principles of law. (*Phillips v. Jefferson Co.*, 5 Kas. 412; *Wabaunsee Co. v. Walker*, 8 Kas. 431; *K. P. Rly. Co. v. Wyandotte Co.*, 16 Kas. 587.) But Sapp relies principally upon a certain statute which reads as follows:

"If, after the conveyance of any land *sold* for taxes, it shall be discovered or adjudged that the *sale* was invalid, the county commissioners shall cause the money paid therefor on the sale, and all subsequent taxes and charges paid thereon by the *purchaser* or his assigns, to be refunded, with interest on the whole amount at the rate of ten per cent. per annum, upon the delivery of the deed to be canceled."—[Laws of 1866, page 280, § 85; Gen. Stat. 1058, § 121.

The tax law of 1876 was passed since the judgment was

rendered in this case. The tax deeds in this case were duly delivered up to be canceled. Sapp claims that the words "sold," and "sale," as used in the foregoing statute, relate to and include the subsequent *assignments* of the tax-sale certificates by the county clerk, as well as the original *sale* of the land made by the county treasurer; and that the word "purchaser," as used in said statute is a comprehensive term including the subsequent *assignee* of the county, as well as the original *purchaser* from the county treasurer at the original tax sale. Evidently however, the legislature did not intend any such thing. Everywhere in the statutes relating to tax sales, (passed prior to the rendition of the judgment in this case,) these words seem to have been used with reference to the original tax sale, and not with reference to assignments. The legislature in passing such statutes did not seem to have in contemplation void assignments made upon valid tax sales. But everywhere they seem to have had in contemplation only void tax sales proper, and such sales only as were void for some error or irregularity existing at the time or before the making of such sales. In the present case the sale was valid, and it was only the subsequent assignment of the title, and of the tax-sale certificates, that were void.

The judgment of the court below will be affirmed.

All the Justices concurring.